UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARVIN ODUMS,[1]

               Plaintiff,

            -against-

PRESTON NIBLACK, dba Commissioner of New York City Department of Finance; MARK F. SCHROEDER, dba Commissioner of the New York Department of Motor Vehicles; RAMKELLAWAN, A.N., dba Traffic Agent for New York Department of Finance; and LAMKAKAKUMAR, N., dba Traffic Agent for New York Department of Finance,

               Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

22-CV-7230 (OEM) (LKE)

ORELIA E. MERCHANT, District Judge:

        On November 22, 2022, Plaintiff Marvin Odums filed this *pro se* action alleging that New York City officials violated his constitutional rights by assessing fines for violations of traffic regulations and impounding his car. *See* ECF 1. By Memorandum and Order entered October 16, 2023, the Court granted Odums' application to proceed *in forma pauperis* and dismissed his complaint, with leave to file an amended complaint. *See* ECF 4. Plaintiff filed his Amended Complaint on January 16, 2024. *See* ECF 6. As the new submission fails to cure the deficiencies in the original complaint or state a claim for relief, the action is hereby dismissed.

## BACKGROUND

        In his initial Complaint, Plaintiff alleged that his car was immobilized because of a monetary judgment against him related to violations of New York's Vehicle and Traffic Law. *See*

---

[1] While the Amended Complaint references Iyana Odums as a plaintiff, because Iyana Odums did not sign the complaint, the Court does not consider them to be a plaintiff in this matter. Federal Rule of Civil Procedure 11 requires that every plaintiff sign and date their complaint. *See* FED. R. CIV. P. 11(a). ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.").

ECF 1 at 2. He sought "cancellation of all charges allegedly imposed on [his] automobile," and "compensation for the emotional and financial hardship caused to [him] as a result of the defendants' actions of denying [him] access to my automobile." ECF 1 at 2-3.

The Amended Complaint names Iyana Odums as an additional plaintiff, but only Plaintiff Marvin Odums signed the submission. Plaintiff states that Iyana Odums is his daughter and that she granted him Power of Attorney "to speak on her behalf in this matter." ECF 6 at 4, 12.[2] Plaintiff Marvin Odums attaches a document signed by Iyana Odums appointing Marvin Odums "as [her] 'Attorney-in-Fact.'" *Id.* at 19. Plaintiff Marvin Odums states that he purchased his vehicle, "the 2007 Volvo xc90", "in collaboration with [his] daughter Iyana Odums." *Id.* at 4-5, 12. He attaches a document purporting to be the signed Power of Attorney and a copy of a Pennsylvania title listing Iyana Odums as the owner of the vehicle, the registration as an address in Philadelphia, and with a first lien in favor of "Odums Real Estate LLC." *Id.* at 19-21, 23. Although the vehicle is registered to his daughter in Pennsylvania, Plaintiff claims that "[t]he vehicle has always been in [his] procession [*sic*] and [he has] operated exclusively in [his] travels while here in the city of New York." *Id.* at 4. Plaintiff also attaches two parking tickets issued to a Volvo with Pennsylvania plates.[3] *Id.* at 25.

In addition to the Fourteenth Amendment Due Process claim he raised in his initial complaint, ECF 1 at 2, Plaintiff now asserts additional constitutional claims. ECF 6, at 3. He

---

[2] The submission is preceded by a cover page, does not contain page numbers, and includes multiple exhibits. For ease of reference, the Court refers to all pages of the submission by the page numbers assigned by the Electronic Case Filing System ("ECF").

[3] Plaintiff attaches five copies, two of them duplicates. Two tickets were issued to the Volvo, one for failure to display parking meter receipt, on July 2, 2022, and another on May 30, 2023, for parking during scheduled street cleaning. ECF 6 at 25, 28. A third ticket was issued to a Chevrolet Suburban for double parking on July 13, 2023. *Id.* at 32. Plaintiff does not explain the third ticket's relevance to this case. Plaintiff also attaches a receipt for a payment made to the New York City Department of Finance on March 27, 2023, which includes $2,185.82 in traffic fines. *Id.* at 40-42.

2

asserts that Defendants violated his due process rights under both the Fifth and Fourteenth Amendments by booting and towing the vehicle. *Id.* at 3, 7.

Plaintiff also asserts an equal protection argument under the Fourteenth Amendment. *Id.* at 7. He alleges that "[t]he ticket [agents] are selective [about] who they ticket," and claims that the City's "tendency to disregard any challenge to its jurisdiction to even ticket [a] vehicle is a violation of equal protection under the law." *Id.* He does not explain this contention, nor does he assert that he was specifically targeted for enforcement or present evidence of selective enforcement based on any impermissible distinctions. He does assert that the fees for infractions are "antiquated and arbitrary." *Id.* He states: "Now with an accumulation of three tickets and a total of just $350.00 before the city boots or tows your vehicle. The city is clearly motived by revenue generation. Not by public safety or management of the publics [sic] quality of life here in the city." *Id.* at 7. He also asserts an "Equal protection under the law" claim, purportedly, under Article VI of the Constitution.[4] *Id.* at 3.

Plaintiff argues that "this practice of ticketing a vehicle on the street without due process is nothing more than a 'bill of attainer' [*sic*] which is also unconstitutional in violation of article one section nine and clause two of the United States constitution." *Id.* at 5. He states: "[t]he practice by the city to ticket my vehicle for what the[y] claim to be an expired meter is a direct violation of my constitutional rights concerning . . . 'No bill of attainder.'" *Id.* at 7. He claims that exacting fines at parking meters "[a]cts as a bill of attainder because it affords no trial to the alleged defendant before he is convicted of guilt[] and fined." *Id.* at 47.

---

[4] The Amended Complaint makes no further reference to Article VI of the United States Constitution. Article VI of the United States Constitution involves debts contracted by the States prior to the adoption of the Constitution, the supremacy of federal law, and the requirement that legislators and executive and judicial officers be bound by oath or affirmation to support the federal Constitution. The Court cannot fathom its relevance to the matter at hand.

3

Plaintiff claims: "The vehicle codes do not supersede the plaintiff's inalienable . . . 'rights of travel' as he[] go[es] about [his] personal business." *Id.* at 4. He states: "I also have an inalienable right to have access to this vehicle and its use as long as I have not caused harm [to] anyone else." *Id.* at 6. In an attached Memorandum of Law, Plaintiff claims: "In summary, the supreme court has continuously support[ed] a private citizen as myself to travel upon the road without charge. Parking upon the road going about my personal business without Causing harm to or injury to another person is a natural occurrence and a part of travel." *Id.* at 46. He claims that New York City's Traffic Rules and Regulations related to alternate-side parking regulations for street cleaning (§ 4-08(d)(1)), double parking (§ 4-08(f)(1)), and metered parking (§ 4-08(h)(1)) violate his right to travel and thus violate 18 U.S.C. § 241 and § 242. *Id.* at 3, 8, 46-47.

Plaintiff also seems to be asserting some type of contractual argument. He claims "Every time I received a parking violations ticket on my vehicle the 2007 Volvo xc90 . . . , I refused the ticket and returned it within three days. Consistent with the truth in lending act[5] and/or within the thirty days required per the New York state parking violation statute." *Id.* at 5. He states "The return of the tickets refused and rejected by me to the New York department of parking violation bureau was an indication of both my desire not to contract with the department as well as a challenge to their authority/ jurisdiction." *Id*. He also states that "the plaintiff was unable to contract with the department of parking violations bureau because there is no place on the instrument to plead guilty or not guilty on the ticket nor is there [a] place for a signature." *Id.* at 5. Odums states that he "was force[d] to pay an excess of $2,200.00 to get his vehicle out of impound." *Id.* He claims he "never received any notice of lien from any towing agency hired by

---

[5] Plaintiff mentions the Truth in Lending Act, 15 U.S.C. § 1601 and CFR § 1026 in reference to a "three-day requirement" for "return," but he does not explain the context for application of this alleged requirement. *Id.* at 3, 5, 7-8.

4

the city or from the department of violations bureau," which Odums contends is required by New York Lien Law Section 184. *Id.* at 5-7. He also asserts violations of Section 9-301 of the Uniform Commercial Code. *Id.* at 3. He claims that he filed a UCC financing statement and attaches a copy of a financing statement purporting to name the Pennsylvania Department of Motor Vehicles and the New York City Department of Finance as Debtors. *Id.* at 5, 36-37. He does not attach any contract, mortgage note, or other financial instrument in support of this alleged debt or financial instrument.

Plaintiff demands monetary compensation of $25,000 and an injunction "restrict[ing] any claim to my vehicle . . . based on . . . any parking violations statute." *Id.*

## DISCUSSION

As an initial matter, Plaintiff cannot represent Iyana Odums in this lawsuit, unless he is an attorney admitted to practice in this Court. A non-attorney appearing *pro se* may not represent another *pro se* litigant. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause"). Even if Plaintiff has a Power of Attorney to speak on his daughter's behalf in this matter, he may not do so in this Court. Moreover, to the extent that Plaintiff seeks to assert claims on behalf of the alleged lien-holder, Odums Real Estate LLC, "a layperson may not represent a corporation." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997).

On October 16, 2023, this Court dismissed Plaintiff's Fourteenth Amendment Due Process claims, finding that New York City's parking violations procedures, in conjunction with New York State's judicial system, and the seizure of Odums' vehicle did not violate due process. The Amended Complaint asserts additional constitutional claims, but they also fail to state a claim for relief.

5

Plaintiff now asserts claims under the Fifth Amendment. To the extent that he is raising a due process claim, "the Due Process Clause of the Fifth Amendment applies only to actions by the United States government and federal employees." *Chyung v. City of Norwich*, 22-CV-712 (MPS), 2023 WL 3289088, at *3 (D. Conn. May 5, 2023) (internal quotation marks and citations omitted). If Plaintiff intends to bring a Fifth Amendment takings claim, "it fails because the Takings Clause prohibits governmental authorities from taking property 'for public use without just compensation.'" *Id.*, citing U.S. CONST. amend V. Plaintiff has not plead the first element of a Fifth Amendment Takings claim because here New York City officials (not federal defendants) assessed parking fines for violations of New York's traffic laws and then impounded the vehicle to ensure that the fines would be paid.

Plaintiff also asserts an equal protection claim under the Fourteenth Amendment. The Equal Protection Clause reads, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). In other words, the Equal Protection Clause protects against class or group-based invidious discrimination. *Muller v. Costello*, 187 F.3d 298, 309 (2d Cir. 1999). An equal protection claim can assert that discrimination was based on the plaintiff's membership in a vulnerable class or under theories of selective enforcement or as a "class of one." *See Id.*; *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016), *aff'd*, 692 Fed. App'x. 78 (2d Cir. 2017) (summary order). In this case, Plaintiff claims selective ticketing, but he does not present any facts in support of this claim. He does not allege that he was treated differently because of his membership in any particular group or that he was singled out

from any other drivers who failed to pay for metered parking or move their vehicles for scheduled street cleaning.

Plaintiff's claim that the parking regulations and ticketing operate as a "bill of attainder" meets the same fundamental barrier: Plaintiff has not pled facts in support of his claim.  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977).  The law must specify the particular person or persons to whom it applies. *See Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 385 (E.D.N.Y. 2017) ("The Supreme Court has articulated three elements of a bill of attainder: (1) 'specification of the affected persons,' (2) 'punishment,' and (3) 'lack of a judicial trial.'" (citations omitted)).  Although the constitutional provision Plaintiff cites, Article I, Section 9, applies only to Congress, a separate provision, Article 1, Section 10, applies to state legislatures.  However, Plaintiff has not shown that any of the statutes he cites were enacted specifically to punish him or an identifiable group to which he belongs. *See Smith v. Stack*, 23-CV-9451 (LTS), 2024 WL 54292, at *4 (S.D.N.Y. Jan. 2, 2024) (dismissing plaintiff's claim that a Family Court order was a bill of attainder because plaintiff did not identify any legislation that was "directed at him").  Since New York City's parking restrictions are generally applicable and do not single out Plaintiff for special punishment, the restrictions are not bills of attainder prohibited by the Constitution.

The Court turns to Plaintiff's next argument, that the temporary impoundment of his vehicle violated his "inalienable . . . 'rights of travel'" and "inalienable right to have access to []his vehicle and its use as long as [he] ha[s] not caused harm [to] anyone else." ECF 6 at 4, 6.  As the Supreme Court has held, "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment," and "[f]reedom of

7

movement is basic in our scheme of values." *Kent v. Dulles*, 357 U.S. 116, 125-26 (1958) (describing the liberty interest to travel in the context of issuance of passports for travel abroad).[6] However, this right to travel, whether "across frontiers in either direction, and inside frontiers as well," *id.* at 126, is subject to restrictions. *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971) (finding that the right to travel within a state correlates to the constitutional right to travel between states); *Peruta v. City of Hartford*, 9-CV-1946 (VLB), 2012 WL 3656366, at *6 (D. Conn. Aug. 24, 2012) ("The right to travel, like many constitutional rights, is not absolute."). "Courts have routinely held that reasonable fees or taxes on travel, including parking, do not impermissibly burden the constitutional right to travel." *Peruta*, 2012 WL 3656366, at *7 (citing caselaw). The right to freedom of movement does not include guaranteed access to a particular mode of transport. *See Joseph v. Hyman*, 659 F.3d 215, 219 (2d Cir. 2011) (upholding a tax exemption for Manhattan residents and not others where the "exemption burdens but one mode of travel, and not that drastically"); *Hemsley v. Hawk*, CV 23-00195 (JAO) (WRP), 2023 WL 6378180, at *5 (D. Haw. Sep. 29, 2023) (dismissing a case involving traffic citations and the impounding of a car: "the constitutional right to travel does not include a right to intrastate travel

---

[6] Plaintiff quotes a nearly century-old case from a Virginia state court for the principle that "The right of a citizen to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right which he has under his right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety." *Thompson v. Smith*, 155 Va. 367, 377, 154 S.E. 579, 583 (1930). However, this decision expressly provides that "The exercise of such a common right the city may, under its police power, regulate in the interest of the public safety and welfare; but it may not arbitrarily or unreasonably prohibit or restrict it, nor may it permit one to exercise it and refuse to permit another of like qualifications, under like conditions and circumstances, to exercise it." *Id.* 155 Va. at 377-78, 154 S.E. at 583. Even if this Virginia decision were applicable to New York laws and courts, Plaintiff has not alleged that other New York City drivers are not also subject to parking regulations and additional coercive actions when they fail to pay their parking tickets. Plaintiff also cites *Shachtman v. Dulles*, 225 F.2d 938, 941 (D.C. Cir. 1955) (finding that the arbitrary denial of a passport infringes the right to travel), and *Shapiro v. Thompson*, 394 U.S. 618 (1969), which he claims states: "The right to travel by private conveyance for private purposes upon the Common way cannot be infringed. No license or permission is required for travel when such travel is not for the purpose of commercial profit or gain." ECF 4 at 45-46. In fact, this case, although it discusses the constitutional right to interstate travel, as relevant to state residency requirements for welfare benefits, does not include this quotation about the common law. Plaintiff cites *Miller v. United States*, 230 F.2d 486, 490 (5th Cir. 1956), for the proposition that "[t]he claim and exercise of a constitutional right cannot thus be converted into a crime." *Id.* at 46. Plaintiff has not established that he has a constitutional right to park where New York City's laws forbid or restrict parking.

in one's vehicle."). Contrary to Plaintiff's assertions, New York City is not required to provide him (or any other resident) access to a private vehicle.

For these reasons, Plaintiff's constitutional claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff also asserts claims under provisions of the United States Criminal Code that criminalize civil rights violations, 18 U.S.C. § 241 and § 242. Even if Plaintiff had demonstrated a violation of his civil rights, these claims fail. Generally, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the criminal statute includes an express or implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 79 (1975) (no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); *see also Leeke v. Timmerman*, 454 U.S. 83, 85 (1981) (a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another). Neither § 241 nor § 242 includes an express private right of action, and no such right may be implied from the language of the statutes. *See Williams v. Maney*, 17-CV-5853 (GHW), 2017 WL 6729363, at *2 (S.D.N.Y. Oct. 26, 2017) (no private right of action exists under 18 U.S.C. § 241), *aff'd sub nom. Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854 (2d Cir. 2018); *Storm-Eggink v. Gottfried*, 409 Fed. App'x. 426 (2d Cir. 2011) (no private right of action exists under § 242). Accordingly, Plaintiff's claims under these criminal provisions are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff mentions one other federal law, the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and its implementing provision in the Code of Federal Regulations, 12 C.F.R. § 1026. This law and these banking regulations were enacted to promote the informed use of consumer credit by requiring certain disclosures. *See Kadesha Maddox v. Cap. One Auto Fin., Inc., Euro Motor*

9

*Haus Inc., & BX Mgmt. LLC d/b/a S. Shore Mitsubishi*, 22-CV-7215 (RER) (TAM), 2024 WL 4515922, at *2 (E.D.N.Y. July 31, 2024) ("TILA's purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.' 15 U.S.C. § 1601(a).").

Some of these provisions require lenders in certain home-equity loans and mortgages to deliver specific notices to consumers within three business days. 12 C.F.R. § 1026.9(b)(3)(iii); 12 C.F.R. § 1026.31(c)(1) and (2). Another provision allows three business days within which to rescind a mortgage refinance transaction. 15 U.S.C. § 1635(a). Plaintiff refers to a "three-day requirement" for "return," under the Truth in Lending Act, but his complaints do not involve any credit transactions to which such a requirement would apply. Accordingly, Plaintiff's undefined claims under the Truth in Lending Act are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's remaining claims appear to involve only state law issues, over which this Court does not have jurisdiction. Plaintiff mentions contracts and his inability and unwillingness to enter into a contract with the City of New York. He cites New York Lien Law §184, which provides that "[a] person who tows and stores a motor vehicle at the request of a law enforcement officer authorized to remove such motor vehicle shall be entitled to a lien" for the cost of storage, but only if the person provides timely notice to the owner of the vehicle. N.Y. Lien Law § 184(2). And he asserts that he has a perfected security interest in the 2007 Volvo, pursuant to Section 9-301 of the Uniform Commercial Code, a code that has been adopted by New York State, but is not a federal law and does not confer any federal cause of action. *See Malico v. Vale*, 7-CV-236, 2008 WL 1943997, at *3 (D. Vt. May 1, 2008) (explaining that the UCC is a model statute that has been

10

adopted by the states and does not present an issue of federal law). To the extent that Plaintiff believes he has valid claims under these state law issues, he may pursue them in the New York state courts. This Court does not have jurisdiction over these claims, so they are dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth above, the action is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Any potential state law claims are dismissed without prejudice to bringing them in New York State courts. The federal claims are dismissed with prejudice.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to enter judgment and to mail copies of this Order and the Judgment to Plaintiff.

SO ORDERED.

Dated: November 4, 2024
Brooklyn, New York

/s/
ORELIA E. MERCHANT
United States District Judge